UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERENIK YZEIRAJ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RESTORATION ROBOTICS, INC., RYAN RHODES, CHARLOTTE HOLLAND, FREDERIC MOLL, JEFFREY BIRD, GIL KLIMAN, EMMETT CUNNINGHAM, JR., CRAIG TAYLOR, and SHELLEY THUNEN,<br><br>Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Erenik Yzeiraj ("Plaintiff") individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Restoration Robotics, Inc. ("Restoration Robotics" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.  This is a federal securities class action on behalf of a class consisting of all persons other

than Defendants who purchased or otherwise acquired Restoration Robotics stock pursuant and/or traceable to the Company's Initial Public Offering (the "IPO" or "Offering") that commenced on October 12, 2017, and closed on October 16, 2017, seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") against Restoration Robotics and certain of its officers and directors.

2.  Founded in 2002, Restoration Robotics is a medical technology company that purports to be developing and commercializing a robotic device (the "ARTAS System") designed to assist physicians in performing many of the repetitive tasks that are a part of a follicular unit extraction ("FUE") surgery, a type of hair restoration procedure.

3.  On or about September 1, 2017, the Company announced that it had filed a registration statement on Form S-1 with the SEC relating to a proposed initial public offering of shares of its common stock.

4.  The September 1, 2017 Form S-1 Registration Statement was followed by several amendments, the last of which was filed with the SEC on October 6, 2017 (Registration No. 333-220303), which became effective on October 11, 2017 (as amended, the "Registration Statement").

5.  On October 13, 2017, Restoration Robotics filed with the SEC a Prospectus pursuant to Rule 424(b)(4) (the "Prospectus" and, together with the Registration Statement, the "Offering Materials"), commencing the public offering of 3,575,000 shares of Restoration Robotics shares of common stock priced at $7.00 per share, with an underwriter over-allotment option to purchase up to an additional 536,250 shares.

6.  In violation of the Securities Act, Defendants negligently issued untrue statements of material facts in, and omitted to state material facts required to be stated from, the Offering Materials

filed by the Company with the SEC and presented to the investing public in support of the IPO, and each of the Defendants is strictly liable for such misstatements and omissions therefrom.

7. Further, because of the materially deficient Registration Statements, Defendants have also violated their independent, affirmative duty to provide adequate disclosures about adverse conditions, risk, and uncertainties. *See* Item 303 of SEC Reg. S-K, 17 C.F.R. § 229.303(a)(3)(ii) (requiring that the materials incorporated in a registration statement disclose all "known trends or uncertainties" reasonably expected to have a material unfavorable impact on the Company's operations).

8. As alleged herein, Defendants failed in their duty by inducing public investment in the Company by means of the materially untrue, inaccurate, misleading, and/or incomplete Offering Materials. As a result of the materially misleading Offering Materials, the Company's shares were artificially inflated at the time of the October 12, 2017 IPO, through which Restoration Robotics raised approximately $25 million in gross proceeds.

9. Since Restoration Robotics' IPO, the Company's stock has consistently traded lower than the $7.00 Offering price, weighed down by the truth regarding the Company's business and financial prospects.

10. As alleged herein, Plaintiff, individually and on behalf of similarly situated Class (defined herein) members who also acquired the Company's shares pursuant or traceable to the Offering, now seeks to obtain a recovery for the damages suffered as a result of Defendants' violations of the Securities Act.

## JURISDICTION AND VENUE

11. The claims asserted herein arise under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77(o). This Court has subject matter jurisdiction over this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v).

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 22 of the Securities Act (15 U.S.C. § 77v).

13. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff purchased Restoration Robotics common stock pursuant and/or traceable to the Offering Materials issued in connection with the Company's IPO and has been damaged thereby.

### A. Restoration Robotics

15. Restoration Robotics is a medical technology company founded in 2002, organized under the laws of the State of Delaware and headquartered at 128 Bayetch Drive, San Jose, California 95134. The Company went public on or about October 12, 2017. The Company's shares trade on the NASDAQ Global Market under the symbol "HAIR".

### B. The Individual Defendants

16. Ryan Rhodes ("Rhodes") has served as all relevant times as Restoration Robotics' President, Chief Executive Officer ("CEO") and a member of the Restoration Robotics Board. Rhodes has been a Company director and its CEO since 2016. Rhodes signed or authorized the signing of the Company's Registration Statement.

17. Charlotte Holland ("Holland") has served at all relevant times as Restoration Robotics' Chief Financial Officer ("CFO"). Holland has been the Company's CFO since 2016. Holland signed or authorized the signing of the Company's Registration Statement.

18. Defendants Rhodes and Holland are sometimes collectively referred to herein as the "Management Defendants."

19. Frederic Moll ("Moll") has served at all relevant times as Restoration Robotics' Chairman of the Board. Moll has been a Company director since 2002. Moll signed or authorized the signing of the Company's Registration Statement.

20. Jeffrey Bird ("Bird") has served at all relevant times as a member of the Restoration Robotics Board and signed or authorized the signing of the Company's Registration Statement.

21. Gil Kliman ("Kliman") has served at all relevant times as a member of the Restoration Robotics Board and signed or authorized the signing of the Company's Registration Statement.

22. Emmett Cunningham, Jr. ("Cunningham") has served at all relevant times as a member of the Restoration Robotics Board and signed or authorized the signing of the Company's Registration Statement.

23. Craig Taylor ("Taylor") has served at all relevant times as a member of the Restoration Robotics Board and signed or authorized the signing of the Company's Registration Statement.

24. Shelley Thunen ("Thunen") was at the time of the IPO a member of the Restoration Robotics Board and signed or authorized the signing of the Company's Registration Statement.

25. Defendants Rhodes, Holland, Moll, Bird, Kliman, Cunningham, Taylor, and Thunen are sometimes collectively referred to herein as the "Individual Defendants."

26. The Individual Defendants each participated in the preparation of and signed (or authorized the signing of) the Registration Statement and the issuance of the Offering Materials. Defendant Restoration Robotics and the Individual Defendants are strictly liable for the materially untrue and misleading statements incorporated into the Registration Statement. By virtue of their positons with the Company, the Individual Defendants possessed the power and authority to control the contents of Restoration Robotics' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and market investors.

**CLASS ACTION ALLEGATIONS**

27. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of all persons and/or entities who purchased or otherwise acquired the common stock of Restoration Robotics pursuant and/or traceable to the Company's false and/or misleading Registration Statement and Prospectus issued in connection with the Company's IPO, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of Defendants, and at all relevant times, members of their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

28. The members of the Class are so numerous that joinder of all members is impracticable. During the relevant time period, Restoration Robotics' securities were actively traded on the NASDAQ Global Market under the symbol "HAIR." While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Restoration Robotics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the Securities Act;

(b) whether statements made by Defendants to the investing public in the Registration Statement and Prospectus misrepresented material facts about the business and operations of Restoration Robotics; and

(c) to what extent members of the Class have sustained damages, and if so, the proper measure of damages.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

**A.  Company Background**

33. Restoration Robotics was incorporated in 2002 under the laws of the State of Delaware. At the time of the IPO, the Company also had three wholly-owned subsidiaries: (i) Restoration Robotics, Inc. Limited, incorporated under the laws of Honk Kong, (ii) Restoration Robotics Europe Limited, incorporated under the laws of the United Kingdom, and (iii) Restoration Robotics Korea Yuhan Hoesa, incorporated under the laws of the Republic of Korea.

34. As stated in the Offering Materials, the Company describes itself as "developing and commercializing a robotic device, the ARTAS System that assists physicians in performing many of the

7

repetitive tasks that are a part of a follicular unit extraction surgery, a type of hair restoration procedure."

35.  In the Prospectus, filed October 13, 2017, the Company described its product, as well as its regulatory approvals, as follows:

> We believe the ARTAS System is the first and only physician-assisted robotic system that can identify and dissect hair follicular units directly from the scalp and create recipient implant sites. The ARTAS System includes the ARTAS Hair Studio application, an interactive three-dimensional patient consultation tool that enables a physician to create a simulated hair transplant model for use in patient consultations.
>
> * * *
>
> The ARTAS System is comprised of the patient chair, the cart, which includes the robotic arm, integrated vision system, artificial intelligence algorithms and a series of proprietary end effectors, which are the various devices at the end of the robotic arm, such as the automated needle and punch, that interact with the patient's scalp and hair follicles and perform various clinical functions.

36.  In April 2011 the Company received FDA clearance to market the ARTAS system in the U.S. for dissecting hair follicles from the scalp in men diagnosed with androgenic alopecia ("AGA") who have black or brown straight hair.

37.  The ARTAS system purportedly differentiates itself from other less effective (*i.e.*, prescription medicines, wigs or spray-on applications) or more invasive courses of treatment for AGA (*i.e.*, follicular unit transplantation ("FUT") or strip surgery, which involves the dissection of a large tissue strip from the patient's scalp, the manual removal of hair follicles from the strip, and the implantation into prepared implant sites on the scalp) by "robotically assisting a physician through many of the most challenging steps of the hair restoration process."

38.  As set forth in the Registration Statement, the Company has historically received the majority of its revenue and revenue growth through ARTAS system sales. The Company also collects revenues from procedure based fees (*i.e.*, where physician-customers generally pay on a per-follicle

8

basis for the follicles to be harvested) and service related fees (*i.e.*, maintenance contracts for the ARTAS system).

39. At the time of the IPO, Restoration Robotics had received clearance to sell the ARTAS system in 61 different countries, selling directly in the following regions: the European Economic Area ("EEA"), United States, Korea, Hong Kong, Singapore, Spain, Poland, Beneleux, and Scandinavia. The Company also sells through distributors in other countries.

**B.     The Company Goes Public By Means of the Materially False and Misleading Offering Materials**

40. The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and/or was not prepared in accordance with the rules and regulations governing its preparation.

41. The Registration Statement described, among others, the Company's efforts to obtain regulatory approval for ARTAS's implantation feature (as opposed to simply the harvesting feature then-approved):

> To help facilitate implantation, we are developing a robotic implantation functionality. We believe this robotic implantation functionality, if approved, will help further shorten the learning curve, improve the consistency and reproducibility of results by protecting permanent hair and reducing inconsistencies associated with manual implantation, and could potentially reduce the amount of time each graft spends outside of the scalp and decrease the overall time required for implantation. During the clinical development of the robotic implantation functionality, we have explored several options for delivering this new functionality to existing ARTAS customers. While we have not determined how our current ARTAS System will be upgraded for this functionality, we are committed to providing our current customers a means to access the implantation functionality if and when it is approved.
>
> This robotic implantation functionality is currently in clinical development and is not approved for commercial use.

42. Despite the Company's efforts to paint the robotic implantation functionality as ready-to-go and simply awaiting FDA clearance, the truth was anything but. On March 20, 2018, the

9

Company announced its receipt of FDA 510(k) clearance of the implantation function of the ARTAS system. In this press release, Defendant Rhodes is quoted as saying "We *plan to complete the necessary design and engineering work* to launch the implantation functionality by year-end." (Emphasis added.)

43. This continued delay in the preparation and launch of the now-cleared, but not yet ready function further amplified struggling ARTAS system sales, as potential customers have continued to forego the purchase of an existing, limited ARTAS system in favor of waiting for the forthcoming update. The Company was aware of the possibility, as evidenced by its inclusion in the Prospectus of a claim that, "we are committed to providing our current customers a means to access the implantation functionality if and when it is approved," yet entirely omitted any reference to prospective customers choosing to instead wait out the product release cycle.

44. The Registration Statement further misrepresented the Company's salesforce and its ability to sell the ARTAS System in the United States, stating:

> **U.S. Sales**
> We sell the ARTAS System, provide service and generate procedure based revenue by helping our physician customers build their hair restoration practice, through a direct sales force in the U.S. which, as of May 31, 2017, included seven regional sales managers, or RSMs, seven CTMs and seven PSMs.
>
> **Regional Sales Managers**
> Our RSMs are responsible for coordinating and executing the direct sales of the ARTAS Systems. On average, our RSMs in the U.S. have more than eight years of experience selling aesthetic capital equipment. We target potential customers through marketing events and programs, and we leverage longstanding RSM relationships with dermatologists, plastic surgeons and cosmetic aesthetic surgeons.
>
> **Clinical Training Managers**
> Our CTMs provide high quality, comprehensive training and education to physicians on the use of the ARTAS System and on how to build their hair restoration practices. Our CTM team is comprised of seven highly-skilled professionals with an average of over 12 years of experience in training physician practices in hair restoration or other aesthetics procedures and

> surgery. We require this initial training to assist physicians and their staffs in performing the ARTAS procedure in accordance with the product's cleared instructions for use. Prior to the installation of the ARTAS System, the CTMs meet with the physician and their technicians to assess the level of training that will be required.
>
> Our CTM training programs involve product and procedure training. During this initial training, we typically have one to three CTMs on site. We have found that a key to adoption and utilization of the ARTAS System is clinical confidence in the ARTAS System technology and procedure. We often conduct onsite physician training when we introduce innovations, such as the ARTAS Hair Studio application and our Site Making functionality.
>
> **Practice Success Managers**
> Our PSMs are responsible for helping our physician customers build awareness and market the ARTAS procedure and increase ARTAS brand-awareness. Our PSMs average over ten years of experience in developing hair restoration practices and aesthetics practices. They form strong relationships with our customers and consult on how to integrate the ARTAS System into their practices, while raising awareness of the procedure among potential patients. This process often begins before the ARTAS System is installed at the customer site. Our PSMs work closely with the team that will manage the ARTAS business at the practice level to establish goals and develop detailed strategies to achieve these goals. This includes extensive training and coaching with respect to the patient consultation process. We provide easily implemented marketing tools allowing practices to create individually tailored website content, direct mail advertisements, print ads for magazines and newspapers and brochures. In addition, PSMs consult on methods to raise awareness of the ARTAS procedure through practice events, public relations, television, and radio advertising and other channels.

45.     The truth, however, was that the Company was not equipped with a sufficient salesforce to effectively grow the business in the United States. This would come to light when, on the May 14, 2018 earnings call discussing Restoration Robotics' financial results for the first quarter ended March 30, 2018 (just months after the IPO), defendant Rhodes touted the bolstering of the Company's sales staff in that quarter while stating that "[i]n the near-term, we expect some level of softness as we further optimize and expand our sales teams as the new U.S sales reps take time to become more productive." This expansion of the Company's sales team so soon after the IPO belies any claim at the time of the IPO that the Company was well-positioned to grow its domestic business through increased sales.

46. The misstatements related to the domestic sales staff are exacerbated by the false and misleading statements regarding the Company's purported focus on "[e]xpand[ing] our international business by adding distributors and sales support staff to increase sales and strengthen physician relationships in our international markets":

> *Expand Our International Business*. According to ISHRS, the size of the international hair restoration market is larger than the U.S. market and in certain markets FUE is already believed to be the preferred method for hair restoration surgery. We are focused on increasing our market penetration overseas and building global brand recognition. In 2016, approximately 57% of our revenues were generated outside of the US. We intend to add distributors and sales support staff to increase sales and strengthen physician relationships in our international markets.

47. The Registration Statement further stated:

> Since launching the ARTAS System in 2011, we have obtained clearance to sell our products in a total of 61 countries. In June 2012, we obtained our CE mark to sell our product into the European Economic Area, or EEA. We have sold into 30 countries and sell directly into the U.S., Korea, Hong Kong, Singapore, Spain, Poland, Benelux and Scandinavia, and through distributors in the other countries. Most recently, we obtained clearance to sell in China in September 2016.
>
> A significant portion of our revenues come from markets outside of the U.S. We believe that this trend will continue as a result of increased penetration in the countries where we sell the ARTAS System, as well as expansion into new international markets. . . . We expect our operating expenses to increase as a result of increased sales and marketing activity to promote penetration in markets outside the U.S. where we already sell the ARTAS System and geographic expansion into new markets.

48. Rather than focusing on expanding the Company's international business (from where the majority of revenue was received, according to the Registration Statement), shortly after the IPO, the Company announced a "pivot to a more U.S. centric strategy," as described by defendant Rhodes on the May 14, 2018 earnings call. Thus, the above-identified statements were materially false and misleading when made.

49. Finally, the Registration Statement made false and misleading statements about the Company's liquidity position and future capital needs, claiming that:

> We have financed our operations principally through private placements of our capital stock, secured debt financing, and payments from customers. We anticipate that the proceeds from this offering, together with our existing cash and cash equivalents and cash generated from sales of our products will last through 12 months from the date of this offering.

50. Despite this false and misleading claim that the proceeds from the offering would fund the Company's operations for a full year after the IPO, by the end of the first quarter of 2018 (ended March 31, 2018) the Company admitted that it did "not have sufficient capital to fund its planned operations," and that it would need to obtain additional financing. That additional liquidity infusion would come in the form of a $20 million Loan and Security Agreement with Solar Capital Ltd. and Bridge Bank announced by the Company on May 11, 2018. In connection with this loan, Restoration Robotics also issued a ten year warrant to purchase Restoration Robotics common stock at a $3.71 per share price.

51. Because of the materially deficient Registration Statements, Defendants have also violated their independent, affirmative duty to provide adequate disclosures about adverse conditions, risk, and uncertainties by withholding from Plaintiff and the investing public, *inter alia*, the truth about the status of the development of the implantation facility of the ARTAS System, including the fact that many prospective customers were refraining from purchasing in anticipation of a new model that the Company had yet to completely design and engineer; the existence of issues in the Company's salesforce that would require significant additional investment in the United States, particularly as Restoration Robotics was abandoning its focus on expanding internationally and instead focusing on domestic sales; and that the cash raised in the IPO would not fund the Company for a full year, as represented, but instead Restoration Robotics would have to seek out a loan agreement just months after

the IPO related to which it would provide a convertible warrant capable of significantly diluting Plaintiff's and the Class' Company holdings.

### C. Each Defendant Was Financially Motivated to Conduct the IPO Pursuant to the False and Misleading Registration Statement

52. As alleged herein, each of the Defendants had a distinct financial motivation on conducting the IPO and taking the Company public at an artificially inflated price.

53. Each of the Individual Defendants maintained large blocks of otherwise illiquid shares in Restoration Robotics that would be converted into tradable stock upon the completion of the IPO. Following the IPO, these privately held shares became tradable assets with actual value for their holders:

54. Further, each of the Individual Defendants was motivated to conduct the Offering in order to finance the ongoing operations of Restoration Robotics to ensure that their investment (both financial and professional) in the Company did not evaporate upon the Company being unable to secure future financing.

55. As announced by the Company on October 16, 2017, Restoration Robotics closed its IPO on that day, selling 3,897,910 shares at a public offering price of $7.00 per share, raising cash proceeds for the Company of approximately $22.7 million after deducting underwriting discounts, commissions, and expenses.

56. As set forth herein, the Company's statements in the Registration Statement, taken individually and collectively, were materially false and misleading because they failed to disclose and misrepresented adverse facts that existed at the time of the IPO.

57. Since the IPO, the Company's common stock has traded down at a greater than 50% discount to the $7.00 IPO price.

58. Plaintiff and members of the Class have been injured.

# FIRST CAUSE OF ACTION

### Violations of Section 11 of the Securities Act of 1933
### Against All Defendants

59. Plaintiff incorporates each preceding paragraph by reference.

60. This Cause of Action is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of Plaintiff and the Class, against all Defendants.

61. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

62. The Company is the issuer of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially untrue statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

63. The Individual Defendants each signed the Registration Statement or authorized the signing of the Registration Statement on their behalf. As such, each is strictly liable for the materially inaccurate statements contained therein and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

64. By reason of the conduct herein alleged, each defendant named herein violated Section 11 of the Securities Act.

65. Plaintiff acquired Restoration Robotics common stock pursuant or traceable to the Registration Statement used for the IPO and without knowledge of the material omissions or misrepresentations alleged herein.

66. Plaintiff and the Class have sustained damages, as the value of Restoration Robotics common stock has declined substantially subsequent to and due to Defendants' violations.

67. This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

68. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from Defendants and each of them, jointly and severally.

## SECOND CAUSE OF ACTION

**For Violation of Section 15 of the Securities Act of 1933
Against Restoration Robotics and the Individual Defendants**

69. Plaintiff incorporates each preceding paragraph by reference.

70. This Cause of Action is brought pursuant to Section 15 of the Securities Act against Restoration Robotics and the Individual Defendants.

71. The Individual Defendants each were control persons of Restoration Robotics by virtue of their positions as directors and/or senior officers of Restoration Robotics. Each of the Individual Defendants had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major stockholders of Restoration Robotics. Restoration Robotics controlled the Individual Defendants and all of its employees.

72. Restoration Robotics and the Individual Defendants each were culpable participants in the violations of Section 11 of the Securities Act alleged in the First Cause of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.   Declaring this action to be a class action and certifying Plaintiff as a representative of the Class under Rule 23 of the Federal Rules of Civil Procedure and his counsel as Class counsel;

B.   Awarding Plaintiff and the members of the Class damages, including interest;

C.   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees;

D.   Awarding rescission or a rescissory measure of damages; and

E.   Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 28, 2018

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:   (212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Email: peretz@bgandg.com

*Attorneys            for            Plaintiff*